NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0584n.06

No. 10-5282

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 06, 2012*

LEONARD GREEN, Clerk

RAYMOND MILLER,

    Plaintiff-Appellant,

v.

HALLIE JONES, et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
KENTUCKY

Before: SILER and KETHLEDGE, Circuit Judges; GRAHAM, District Judge.[*]

KETHLEDGE, Circuit Judge. Raymond Miller is a Kentucky prisoner. He challenges a prison rule that requires indigent inmates to leave their legal mail unsealed for inspection. The district court granted summary judgment to the defendants because, it concluded, there is no evidence that prison staff had in fact inspected Miller's mail. We reverse.

I.

On December 16, 2008, Miller filed his first pro se complaint in this case. He challenged an alleged prison policy under which prison staff would read "all legal mail going out" after September 22, 2008. The district court reviewed the allegation under the liberal pleading standard applicable to pro se litigants and held that Miller had stated a claim under the First Amendment.

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

After the discovery period ended, Miller filed his first motion to amend the complaint. He clarified his allegations concerning the prison's mail policy: According to Miller, the prison staff would read the outgoing legal mail of indigent prisoners who had obtained a postage subsidy from the prison. The prison did so to verify that the mail was legal and thus eligible for the subsidy.

The defendants filed a motion for summary judgment. They argued that Miller had "failed to specify a[n] [] instance where any of his outgoing mail was actually inspected." The defendants therefore insisted that Miller lacked standing to sue.

A month later, Miller filed a second proposed amended complaint. There, Miller alleged that "interference with [his] legal mail" under the inspection policy had violated his First Amendment rights. In addition to his original claim for damages, Miller proposed a new claim for injunctive relief ordering the prison to revise its inspection policy. (Miller also filed a third proposed amended complaint, which added little.)

The district court granted the defendants' motion for summary judgment. Miller had failed, the court said, to assert that the defendants had read his mail under the policy. Thus, the court concluded that Miller had suffered no injury in fact and lacked standing to sue. It also denied Miller's motions to amend his complaint. Finally, the court said that Miller's amendments concerning the inspection policy would be futile, since Miller lacked standing.

Miller has since obtained counsel and now appeals.

II.

Miller argues that the inspection policy violates his First Amendment right to confidential legal mail and that he is therefore entitled to damages. *See* Miller Br. at 18; *Washington v. Davis*,

416 F. App'x 563, 564 (6th Cir. 2011). To have standing to pursue that claim, Miller must show that the prison has enforced the purportedly unconstitutional policy against him. *See generally City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). He contends that the district court overlooked evidence that the prison has done so.

Miller failed to cite the overlooked evidence in his response to the motion for summary judgment. But courts should consider the allegations in a pro se prisoner's verified complaints (which are effectively affidavits) before entering judgment against him, even if the prisoner fails to cite that evidence in response to a motion for summary judgment. *See Williams v. Browman*, 981 F.2d 901, 902-04, 905 (6th Cir. 1992); *see generally El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Miller's complaint and second proposed amended complaint were both verified. We thus consider whether the statements in those complaints, and similarly accessible evidence, would permit a reasonable jury to conclude that prison staff inspected Miller's mail.

First, Miller submitted evidence that he has been indigent since the effective date of the policy. In a November 2008 grievance, Miller said that he is unable to work for "medical reasons" and that he only receives money from friends or relatives "about 2 to 4 times a year." Miller also filed, with his motion to proceed in forma pauperis, an affidavit in which a prison official certified that Miller's average prison-account balance in June 2008 was eight cents and that Miller received no deposits between June and November 2008. Under prison regulations, Miller therefore qualified as indigent for the full sixth months preceding his complaint in this case (which included the policy's effective date). Since the inspection policy applied to the mail of indigent inmates, a reasonable jury could conclude that Miller has been subject to the inspection rule since its beginning.

Second, there is evidence that Miller has sent legal mail since the prison implemented the policy. Attached to Miller's first amended complaint is the docket sheet from an earlier case. Those records say that Miller filed a "pro se response" to a motion for summary judgment on September 17, 2008 and "pro se objections" to the magistrate judge's report and recommendations on September 22. Presumably Miller submitted those filings himself from the prison. And in this case, too, some of the docket entries for Miller's filings include envelopes marked "Legal Mail" that list the prison as Miller's return address. Thus, Miller has sent legal mail from the prison since September 5, 2008—the date on which the policy actually took effect—and since September 22, 2008—the date on which (according to Miller) the prison began to inspect all indigent legal mail.

Third, there is evidence that the defendants have, since September 22, 2008, been committed to enforcing the inspection policy categorically. According to Miller's first verified complaint, several defendants "stated that they will read all legal mail going out" after September 22. R. 1 at 7-8. Similarly, one of the defendants answered "yes" to an interrogatory question whether "indigent legal mail should be left open for the mail room clerks to censor and read before mailing the legal mail." R. 25, Attach. 2 at 2, 6. Viewing this evidence in the light most favorable to Miller, a reasonable jury could thus conclude by a preponderance of the evidence that the prison has inspected Miller's mail since September of 2008. *See Kathrein v. City of Evanston, Illinois*, 636 F.3d 906, 914 (7th Cir. 2011) (a plaintiff must demonstrate an injury-in-fact by a preponderance of the evidence). A genuine dispute of fact therefore remains as to whether Miller has standing to pursue his damages claim.

Miller also sought to amend his complaint to add a claim for injunctive relief that would require the prison to rewrite its inspection policy. To demonstrate an injury-in-fact sufficient to pursue that forward-looking claim, Miller must show more than that the prison has enforced the policy against him in the past or that the policy "subjective[ly] 'chill[s]'" his mailing practices. *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962-966 (6th Cir. 2009); *see also Lyons*, 461 U.S. at 105-106, 108. He must show that the prison is currently inspecting his mail or that there is an "imminent" threat that the prison will do so. *Fieger*, 553 F.3d at 962, 967. The district court has yet to decide this question in the first instance (or even whether Miller may add the claim to his complaint). We therefore decline, at this stage, to address Miller's standing to pursue injunctive relief.

We reverse the district court's judgment, vacate its order denying Miller leave to amend his complaint, and remand the case for further proceedings consistent with this opinion.